ARTHUR THOMAS, Plaintiff, Appellee, v. CENTRAL STATES ELECTRIC COMPANY, Defendant, Appellant.

No. 42159.

DECEMBER 12, 1933.

REHEARING DENIED APRIL 5, 1934.

E. H. Lundy, and Barnes, Chamberlain, Hanzlik & Thompson, for appellant.

Mallory & Leming, for appellee.

DONEGAN, J.—This is an action in equity in which the plaintiff seeks to recover an alleged overcharge for heat furnished to his residence by the defendant, on the ground that a mutual mistake was made in the measurement upon which the charges made by defendant were based. It appears that during the summer of 1923 the plaintiff purchased his residence, in which the radiators had already been installed, and that, at the request of the plaintiff, the defendant connected its service mains with the radiating system in plaintiff's residence, and thereafter- furnished such residence with heat. The heat thus furnished was for each heating season beginning with the fall of 1923, and up to the time of the commencement of this action in the year 1932. During all of the time involved in this

action, bills were rendered by the defendant and paid by the plaintiff, based on a charge for square feet of radiation. During a part of the time the charge was made on a basis of 310 square feet of radiation, and, after a portion of the radiation had been removed, the charge was thereafter made on a basis of 270 square feet of radiation. About January 1, 1932, plaintiff discovered that the radiators in his residence did not contain the number of square feet of radiating surface upon which he alleges the charges made by the appellant and paid by him had been computed, and, upon the refusal of the defendant to refund the excess payments which plaintiff claimed to have made, this action was instituted.

As the basis of his action, plaintiff claimed that about September 1, 1923, pursuant to an oral arrangement, the defendant connected its mains with plaintiff's heating system, and began to furnish heating service at the customary charges made to customers receiving like service, at a price based on the number of square feet of radiation contained in his radiating system; that in the rooms on the first floor of his residence there were thirty-six sections of radiation upon which defendant charged and collected on the basis of 5 square feet per section, and that in the rooms on the second floor of his residence there were twelve sections of radiation upon which defendant company charged at the rate of 7.50 square feet per section, whereas the actual surface measurement of such radiators disclosed that each section of the radiation in the downstairs rooms contained only 3.68 square feet per section, and the radiators in the rooms on the second floor contained approximately only 6.50 square feet per section. He further alleged that in the charges thus made against him and the payment of such charges by him there was a mutual mistake, and asked for an accounting and a refund of the amount of overcharges which he claimed were thus paid. The defendant denied that it was ever intended or agreed that the charges should be based on the surface measurement of the radiators, denied that there was any mutual mistake, and alleged that such charges were based on the equivalent or rated radiation in square feet furnished plaintiff, and that such was the customary method of measuring the heat furnished. From a decree and judgment in favor of plaintiff, the defendant appeals.

The contention of the appellee, as expressed in his brief and argument, is as follows:

"Appellee asserts that, when appellant charged him and billed him for so many square feet of radiation, that appellant meant, and intended for him to understand that he was being charged for the number of square feet of equipment, the number of square feet of radiation he had in his dwelling house; that the way appellant found this fact was to compute the square feet in the surface of appellee's radiators."

The whole matter at issue in this case centers around the method used in computing the radiation furnished plaintiff by defendant. Plaintiff's contention is that such radiation should be measured by the square feet of radiating surface contained in this radiating system, while defendant contends that the charge for square feet of radiation made by it should not be based upon the number of surface square feet in the radiating system, but upon what is known as equivalent or rated radiation as figured in square feet. The burden was upon the plaintiff to prove that a mistake had been made by defendant which resulted in the overcharge claimed.

While appellee's petition alleged an oral arrangement by which the appellant company agreed to furnish heat, the evidence is silent as to any express terms of such oral arrangement in reference to the unit of measurement upon which charges were to be made and the rate to be paid. We think the evidence fairly indicates that all that transpired in connection with the oral arrangement was that the appellee applied for, and appellant agreed to furnish, service. Following such oral arrangement, service was furnished by appellant, and the bills rendered for such service were based on a charge for square feet of radiation. Appellee contends that, in the use of the terms "square feet of radiation", the appellant and appellee both understood that the number of square feet of radiating surface of appellee's radiators was intended. In support of this contention, appellee introduced an extract from the American Society of Heating and Ventilating Engineer's Guide for 1926 and 1927, which stated that "the unit of measure in figuring radiation is the square foot of heating surface, which is the external surface." He also introduced the testimony of an expert witness to the effect that prior to 1928 the method of determining square feet of radiation was by measuring the actual square feet of radiating surface. Such witness further testified that he had measured the surface of one of plaintiff's downstairs radiators and found it to contain only 3.68

square feet of radiating surface. It further appeared from the evidence that in making such measurement the witness used practically the only method by which the actual surface in square feet of radiators can be determined, which is by a laborious process of covering the radiator with paper or tinfoil or other similar material, and then removing such covering and measuring its area in square feet.

It is undisputed that the square feet of surface of the radiators in plaintiff's residence was never determined by the method above referred to, and there is no evidence to show that this method was used in determining the number of square feet of radiation for which appellant charged any of its customers. In our opinion, the preponderance of the evidence fails to show that this method was commonly used by heating companies or those engaged in the manufacture or installation of radiating systems in determining the number of square feet at which radiators were rated. It is undisputed that since 1928 a standard method has been very generally adopted by which the heating capacity of radiators is quite accurately determined. This method employs what is known as the British thermal unit, which is commonly designated by the letters B. T. U. While the B. T. U. method of computation was not adopted as standard by the American Society of Heating and Ventilating Engineers until 1928, we think the preponderance of the evidence clearly indicates that this method had been taught in the schools of engineering and recognized as the most accurate method of determining the amount of heat given forth by radiators for many years prior to 1923, and that this method, or another method which gave practically the same results, had been used by the manufacturers in rating the radiating capacity of radiators prior to the year 1923.

The evidence shows that the radiators in plaintiff's residence were manufactured by the Chandler Pump Company, Cedar Rapids, Iowa; that in the catalogue issued by the said Chandler Pump Company the downstairs radiators in appellee's residence were rated at 5 square feet of radiation and the radiators in the upstairs rooms at 7½ square feet of radiation; that the contractor who installed the radiation in plaintiff's house used the figures contained in the catalogue, in determining the amount of radiation required in each room; and that this was the common practice of contractors in installing radiation. The evidence further shows that at no time did the appellant company ever expressly agree that the charge for square feet of radiation made was based upon the number of sur-

face square feet in the radiating system in appellee's residence. The amount of radiation upon which the charge was first made was based upon the rating of the radiators as contained in the catalogue of the Chandler Pump Company. The only measurements made were of the height of the radiators, and this was made merely for the purpose of identifying the radiators in plaintiff's residence with the radiators as shown in the catalogue of the Chandler Pump Company upon which the ratings were there made. The evidence shows that not only the Chandler Pump Company but other companies manufacturing radiators rated the heating capacity of radiators in square feet, that such rating was not identical with the number of surface square feet in such radiators, and that it was the general practice of the defendant company to take the rated radiation of the radiator manufacturers in determining the square feet of radiation to be charged to different customers.

A test of a downstairs radiator in appellee's residence was made in accordance with the B. T. U. method. According to such test, this radiator showed 4.94 square feet of radiation. The evidence showed that said radiator had been covered with a coat of bronze aluminum paint, and that such coat of paint might easily diminish its heating capacity to 4.94 square feet instead of the five square feet at which it was rated. While the petition alleged that charges in connection with the upstairs radiators had been made at the rate of 7.50 square feet per section, and that they contained only 6.50 square feet of surface radiation, the evidence fails to substantiate these allegations.

We think the evidence fails to sustain the appellee's contention that it was ever agreed or understood that the charges made by appellant for service would be based upon the square feet of radiating surface of appellee's radiators. On the contrary, we think the evidence sustains the contention of the appellant that its charges, not only to the appellee but to its customers, were based upon the rated or equivalent square feet of radiation. We therefore see no basis upon which it could be determined that any mistake was made by appellant in rating its charges for square feet of radiation, or upon which the court could find that appellee was entitled to recover any sum whatever from the appellant.

In view of the decision reached by us, it becomes unnecessary to consider other propositions which were presented on this appeal.

The decree and judgment of the trial court is therefore reversed.

ALBERT, C. J., and KINDIG, STEVENS, CLAUSSEN, and ANDERSON, JJ., concur.